## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:09cv200

| | | |
|---|---|---|
| **THOMAS J. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **INGLES; SUNNY CLARK, Head of** | ) | |
| **Security; WACKENHUT CORP.;** | ) | |
| **MAJ. TERRY NORRIS; EXECUTIVE** | ) | |
| **SECURITY SERVICES; and BOB** | ) | |
| **COPELAND, owner,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on the following pleadings:

(1)     **defendants "Ingles Markets, Inc. and Sunny Clark's Motion to Dismiss (#12)(error in the original)**;[1]

(2)     defendants "Ingles Markets, Inc. and Sunny Clark's Memorandum in Support of Their Motion to Dismiss" (#13)(error in the original);

(3)     **defendant Maj. Terry Norris's Motion to Dismiss Plaintiff's Complaint (#14)**;

(4)     defendant Maj. Terry Norris's Memorandum in Support of Defendant Maj. Terry Norris's Motion to Dismiss Plaintiff's Complaint (#15);

(5)     **defendant The Wackenhut Corporation's Motion to Dismiss Plaintiff's Complaint (#16)**;

---

[1]     Emphasis added to distinguish motions and to aid further review.

(6)    defendant The Wackenhut Corporation's Memorandum of Law in Support of Defendant The Wackenhut Corporation's Motion to Dismiss Plaintiff's Complaint (#17);

(8)    plaintiff's "Response to Defendant Ingles Markets, Inc. and Sunny Clark's Motion to Dismiss Complaint' (#24)(error in the original);

(9)    plaintiff's "Memorandum in Response to Ingles Markets, Inc. and Sunny Clark's Memorandum of Defendants' Motion to Dismiss" (#25)(errors in the original);

(10)   plaintiff's Response to Defendant The Wackenhut Corporation's Motion to Dismiss Complaint (#26);

(11)   plaintiff's "Response to The Wackenhut Corporation's Memorandum in Support of Defendandt's Motion to Dismiss" (#27)(error in original);

(12)   plaintiff's "Response to Defendant Maj. Terry Norris' Motion to Dismiss Complaint" (#28)(error in the original);

(13)   plaintiff's "Memorandum in Response to Maj. Terry Norris' Memorandum of Defendant's Motion to Dismiss" (#29)(error in the original);

(14)   **defendant Executive Security Services' Motion to Dismiss (#30)**;

(15)   defendant Copeland Holdings, LLC's (a/k/a Executive Security Services) Memorandum of Law in Support of Defendant Copeland Holdings, LLC's Motion to Dismiss Plaintiff's Complaint (#31);

(16)   **defendant Bob Copeland's Motion to Dismiss (#32)**;

(17)   defendant Bob Copeland's Memorandum of Law in Support of Defendant Robert F. Copeland's Motion to Dismiss Plaintiff's Complaint (#33);

(18)   plaintiff's Response to Defendant Executive Security Services' Motion to Dismiss Complaint (#36);

(19)   plaintiff's Response to Defendant Bob Copeland's Motion to Dismiss Complaint (#37);

(20)   plaintiff's "Memorandum of Law in Response to Both Bob Copeland and Executive Security Services' Motions to Dismiss Complaint" (#38)(error in the original);

(21)   defendant The Wackenhut Corporation's Reply Brief in Support of Its Motion to Dismiss Plaintiff's Complaint (#39);

(22)   defendant Maj. Terry Norris's Reply Brief in Support of his Motion to Dismiss Plaintiff's Complaint (#40)

(23)   defendants "Ingles Markets, Inc. and Sunny Clark's Memorandum in Reply to Plaintiff Thomas J. Miller's Memorandum in Response to Ingles Markets, Inc. and Sunny Clark's Motion to Dismiss" (#41)(errors in original);

(24)   plaintiff's Brief Memorandum in Reply to Defendant's Reply Memorandum (#42)(filed in violation of Local Civil Rule 7.1);

(25)   **defendant "Maj. Terry Norris and the Wackenhut Corporation's Motion to Strike" (#43)(error in the original)**; and

(26)    plaintiff's "Response to Major Terry Norris and The Wackenhut Corporation's Motion to Strike" (#45)(error in original).

While the action is by no means complex, the motions practice employed in this case has made review of such motions complex. Due to such complexity, the court will forego the usual factual background and address each motion *seriatim*, making reference to any factual allegations contained in the Complaint that are relevant to such motion.

## FINDINGS AND CONCLUSIONS

### I.    Applicable Standards

As to the motions to dismiss, the various defendants seek dismissal of the claims asserted against them under the following provisions of the Federal Rules of Civil Procedure: Rule 12(b)(1); Rule 12(b)(2); Rule 12(b)(4); Rule 12(b)(5); and Rule 12(b)(6). See Fed.R.Civ.P. 12(b). As to the Motion to Strike the surreply plaintiff filed without leave, defendant Maj. Terry Norris has invoked Rule 12(f). See Fed.R.Civ.P. 12(f). Each applicable standard will be briefly discussed below.

### A.    Rule 12(b)(1) Standard

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse

judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve

the jurisdictional objection as a direct attack on the merits of the case.  United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

## B.    Rule 12(b)(2)

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant.  In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence.   When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial.  Id.   When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted).   A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing.  Bakker, at 676.  Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing  the most favorable inferences for the existence of jurisdiction.  Id.

## C.    Rules 12(b)(4)&(5)

Where a motion to dismiss is filed based on insufficient process or insufficient

service of process, affidavits and other materials outside the pleadings may be properly submitted and considered.

> [T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.

Light v. Wolf, 816 F.2d 746, 751 (D.C.Cir.1987) (internal quotations omitted). Where the procedural requirements of sufficient process and service of process are not satisfied, a court lacks power to assert personal jurisdiction over a defendant. Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C.Cir.2002). Inasmuch as the sufficiency of process and service of process concern the court's jurisdiction, consideration of materials outside the pleadings, such as affidavits, is appropriate. Dimet Proprietary, Limited v. Industrial Metal Protectives, 109 F.Supp. 472 (D. Del. 1952).

### D.    Rule 12(b)(6): Applicable Standard

The familiar "no set of facts" standard applicable to motions to dismiss under Rule 12(b)(6), provided by the Supreme Court in Conley v. Gibson, 355 U.S. 41 (1957), and later revisited in Neitzke v. Williams, 490 U.S. 319 (1989), has been specifically abrogated by the Court in two recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard

would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in her complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Ashcroft, the Court held that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by

the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id.  This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  Thus, a complaint fall short of the plausibility standard where plaintiff "pleads facts that are 'merely consistent with' a defendant's liability . . . ." Id.  While the court accepts plausible factual allegations made in the complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

The court will accept true all of the factual allegations contained in the Complaint, and, as well, identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft, supra, at 1950.  As reflected below, the court has assumed the truth of any well-pleaded factual allegations "and [will] then determine whether they plausibly give rise to an entitlement to relief." Id. (alteration added).

## E.    Rule 12(f) Standard

Under Rule 12(f), the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Striking a pleading is a drastic remedy.  Augustus v. Board of Public Instruction of Excambia County, Florida, et al., 306 F.2d 862, 868 (5th Cir.1962).  A pleading should only be stricken

when the pleading bears no relationship to the controversy. <u>Brown & Williamson Tobacco Corp. v. United States</u>, 201 F.2d 819, 822 (6th Cir.1953). A motion to strike places a "sizable burden on the movant," <u>Clark v. Milam</u>, 152 F.R.D. 66, 70 (S.D.W.Va.1993),and would typically require a showing that denial of the motion would prejudice the movant. <u>Id.</u>

## II.    Roseboro Notice

Inasmuch as plaintiff is proceeding *pro se*, he was advised of his obligation to respond and the time for doing so in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). The court advised plaintiff of both the nature of the motions and the manner in which he was required to respond. The above review of the pleadings submitted reveals that plaintiff heeded the court's <u>Roseboro</u> Orders and timely filed responses to the motions to dismiss. <u>See</u> <u>Roseboro</u> Orders (Docket Entries ## 18, 19, & 35).

## III.    Discussion

### A.    Defendants Ingles Markets, Inc.'s and Sunny Clark's Motion to Dismiss (#12)

#### 1.    Nature of the Motion

Defendants Ingles Markets, Inc. and Sunny Clark (hereinafter "the Ingles defendants") have moved to dismiss the claims asserted by plaintiff against them. The defendants move to dismiss plaintiff's Complaint pursuant to Rules 12(b)(2), (4), (5), and (6).

#### 2.    Facts Drawn from the Complaint Relevant to this Motion

In pertinent part of the Complaint, plaintiff alleges that defendants

discriminated against him in relation to his employment as a security guard. He contends that defendants violated the Americans with Disabilities Act, 42 U.S.C. § 1211, *et seq.* (hereinafter the "ADA") and the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* (hereinafter the "ADEA") by harassing him, denying him equal pay, terminating him and failing to employ him. For damages, plaintiff seeks $1,433,000.000. Complaint, at ¶ G.

Plaintiff asserts that he was a security guard, employed by co-defendant Wackenhut Corp. (hereinafter "Wackenhut"), who assigned him to work at defendant's distribution center in Black Mountain, North Carolina. Complaint, Attachment "A", at p. 1. He alleges that Defendant Clark was the Security Director at the distribution center and that Ms. Clark "harassed" him by saying he "(1) wasn't doing [his] job, (2) was letting someone through the door without checking their identify [*sic*] on the computer, (3) was not checking employees' bags, (4) was being too abrasive with people, and (5) was breaking rules by having someone in [his] office." Id.

Plaintiff further alleges that in or around January 2008, Wackenhut lost its security contract, "due to poor management and poor communication between Ingles and Wackenhut." Id. Plaintiff then asked Wackenhut to place him in another contractor location, the St. Joseph's Hospital parking lot, but Wackenhut told him no openings were available. Id. After Wackenhut lost the Ingles contract, plaintiff claims it was picked up by Executive Security Services ("ESS"). Id. Thereafter, plaintiff alleges he applied with ESS, but did not get the job. Id., at pp. 2-3. He

claims he failed to get the job because Defendant Clark did not want him back at Ingles' distribution center.  Id., at p. 3.

Plaintiff alleges that while working at the distribution center, he was employed by Wackenhut and that his pay, hours, and relief schedule were governed by Wackenhut policy.  Complaint, Attachment "B".   There is no allegation in the Complaint or in any attachment that plaintiff was employed by, applied with, or was ever denied employment by Ingles.

### 3.    Discussion

From the outset, it appears under the Rule 12(b)(6) standard provided in Twombley and Ashcroft that any claim for age discrimination asserted in this action must be dismissed summarily as it simply is not plausible.  Plaintiff, who was at times relevant to his allegations 65 years old, alleges that he was replaced by a security guard who was seventy-one years old.   Complaint, Attachment "A", at p. 3. Plaintiff's age discrimination claim is, therefore , patently frivolous as he cannot satisfy the element that requires he show replacement by someone outside the protected age group.  See Goldberg v. B. Green and Co., 836 F.2d 845 (4th Cir. 1988)(replacement by older employee precludes a *prima facie* case of age discrimination under the alternative proof scheme).

Reading the Complaint in a light most favorable to plaintiff, it appears by his own allegations that the Ingles defendants were not plaintiff's employer.   In order to state a claim under either the ADA or the ADEA, plaintiff must be able to sufficiently plead that such defendants: (1) fall within the statutory definition of "employer"; and

(2) exercised substantial control over significant aspects of his compensation, terms, conditions, or privileges of employment. Magnuson v. Peak Technical Services, Inc., 808 F. Supp 500, 507 (E.D. Va. 1992)(Title VII), aff'd, 40 F.3d 1244 (4th Cir. 1994).

Further, plaintiff has not alleged sufficient facts to support a finding that the Ingles defendants were his "putative employer." Joint employment allows a defendant that doesn't fit into the "conventional" employer status to be held liable under federal employment statutes like the ADA and ADEA if such defendant controls "some aspect of an individual's compensation, terms, conditions, or privileges of employment." Evans v. Wilkinson, 609 F. Supp. 2d 489, n5 (D. Md. 2009)(citation omitted). In the Fourth Circuit, this entails combining common law agency principles with aspects of the "economic realities" test. Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981-82 (4th Cir. 1983). Courts look to the putative employer's right to control the manner and means by which the individual's work is accomplished, and include the following relevant factors: (1) the type of occupation; (2) the skill required for the occupation; (3) who furnished the equipment used at the place of work; (4) the length of time worked; (5) the method of payment; (6) how the relationship is terminated; (7) whether annual leave is available; (8) whether work is integral part of employer's business; (9) whether the employer provides retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. Alford v. Martin & Gass, Inc., 2009 U.S. Dist. LEXIS 15110, at *27-28 (E.D. Va. 2009). None of the allegations in the Complaint or the attachments thereto weigh in favor of a finding that the Ingles defendants were plaintiff's putative

employer: his pay, hours and other policies were set by Wackenhut (Complaint, Attachment "B"); following cancellation of the Ingles contract, he desired to continue working for Wackenhut at a different location (Complaint, Attachment "A", p. 2); and Wackenhut provided plaintiff's uniform. Clearly, plaintiff's work as a security guard is not integral to the sale of groceries; there is no allegation that Ingles paid plaintiff's Social Security taxes or allowed him to participate in their retirement plan; and his work at Ingles terminated when the contract was terminated. Thus, all the factors that can be discerned from the pleadings indicated that Ingles was not even a putative employer. The only control apparently exercised by Ingles over plaintiff was the manner in which he performed his job. As discussed above, Defendant Clark had issues with and apparently complained to Wackenhut about errors she found with plaintiff's performance. As the court in Alford found, however, such oversight does not equate with control necessary to be a putative employer, finding that "if this were sufficient to create an employer-employee relationship, then any worker in a contracting situation would be an employee." Id.

As a matter of law, Defendant Clark is not a proper party to this lawsuit as a matter of well settled law. Plaintiff cannot state a claim against Defendant Clark for discrimination under the ADA, as individuals are not liable for violations of the ADA. Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (1999). A like result is reached under the ADEA. McNeal v. Montgomery County, 2009 U.S. App. LEXIS 951, at n6 (4th Cir. 2009). The comments attributed by plaintiff to Defendant Clark relate solely to her dissatisfaction with plaintiff's performance, and would not in any event

-14-

provide plaintiff with a plausible basis for imputing individual liability to Defendant under the ADA or ADEA.

In his response to these defendants' motion, plaintiff focuses on complaints made by Defendant Clark to Wackenhut and ESS employees about his performance. He contends that it was these complaints caused him to lose employment opportunities and, therefore, Ingles had enough control over him to be his employer for purposes of this lawsuit. Response, at pp. 5-6. Claims under the ADA and ADEA are not catch all provisions of law intended to govern all aspects of employment, but are instead very precise enactments by Congress designed to discourage and sometimes punish specific violations of federal rights. Taking plaintiffs allegations concerning the alleged acts of Defendant Clark as true, as the court must, they are not a proper basis for extending employer liability to defendants under the ADA or ADEA. Alford v. Martin & Gass, Inc., supra, at 30.

Finally, while these defendants have clearly shown that both process and service of process were defective, the court will not take up these motions as to do so would be a waster of judicial resources inasmuch as plaintiff has clearly failed to state a claim against these defendants. The undersigned will, therefore, respectfully recommend that the claims against these defendants be dismissed in accordance with Rule 12(b)(6).

## B. Defendant Maj. Terry Norris's Motion to Dismiss Plaintiff's Complaint (#14)

### 1. Nature of the Motion

Defendant Maj. Terry Norris moves to dismiss the claims against him under

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. He contends that dismissal is warranted under Rule 12(b)(1) because he was not named in the administrative charge filed with the EEOC and under Rule 12(b)(6) because, like Defendant Clark, neither the ADEA nor the ADA permit individual liability.

## 2.    Facts Drawn from the Complaint Relevant to this Motion

Plaintiff is 65 years old, he alleges that he is totally disabled and that such disability qualified his participation in the Social Security Disability Act "Ticket-to-Work" program. As a result of participation in the program, Mr. Miller could only work part time hours until June 1, 2008.[2] While plaintiff does not formally describe the role of Defendant Norris in his Complaint, at attachment "A," page 2, he states that "Major Terry Norris (Wackenhut Corp.) Would ignore my and my coworkers' reports to him . . . ." From this allegation, the court has assumed that Defendant Norris was an employee of Defendant Wackenhut and was plaintiff's immediate supervisor.

Wackenhut hired plaintiff in June of 2006 to work as a part-time security guard at the Ingles Distribution Center of Black Mountain, NC which is three miles from his house. He worked as the Acting Supervisor for Wackenhut at the Ingles worksite for a few months. He alleges he did not receive supervisory pay from Wackenhut during this time.

From July 2007 through January 2008, Defendant Clark accused plaintiff of

_____

[2]        The typical citation to paragraphs of the Complaint is not practically possible inasmuch as plaintiff's Complaint consists of a form usually used in prisoner cases, that incorporates three "attachments" wherein plaintiff details the substance of his claims.

multiple instances of poor work performance. Mr. Miller contends that these accusations were false. In January 2008, Ingles terminated its security contract with Wackenhut, resulting in the elimination of plaintiff's position with Wackenhut. Defendant Executive Security Services was then awarded the security guard contract with Ingles. Defendant Bob Copeland owns that company. He allegedly promised plaintiff a job working on the new Ingles security contract with Executive Security Services, but plaintiff was never hired. On January 13, 2008, after the loss of the Ingles contract, Defendant Norris told plaintiff that his employment was being terminated. See Attachment A, at 2. On January 18, 2008, plaintiff turned in his uniform. Id. Defendant Norris told plaintiff on that date he had no job for him, but Wackenhut was training new employees that day. Id. He further alleges that George Howell, who he states was 65 or older, told him that Defendant Norris called him and offered him a job. Wackenhut did not respond to plaintiff's alleged later telephone calls seeking new employment opportunities

In Count I , plaintiff contends that the decision to terminate his employment was made in violation of the ADEA and the ADA. See Attachment A to the Complaint. In Count II, plaintiff appears to assert a claim that he was discriminated against by way of receiving unequal pay. He states that "I was discriminated against due to my receiving unequal pay when I served as Acting Supervisor." See Attachment B to the Complaint. While plaintiff discusses at length the failings of other employees in their duties and his having to work one long shift of 28 hours, his complaint appears to be that he did not receive supervisory grade pay, contending that

he was only paid $8.25 an hour while some temporary supervisors received $9.00 an hour.  Id.

Reading all the factual allegations in a light most favorable to plaintiff, as well as the claims under the ADEA and ADA, it appears that plaintiff is alleging that his supervisor is personally liable for terminating his employment under the ADEA and ADA, and that his supervisor is also liable for discrimination based on Wackenhut purportedly failing to pay him the 75 cents per hour that other supervisors were allegedly receiving from Defendant Wackenhut.

### 3.    Discussion

#### a.    Rule 12(b)(1) Dismissal of Count I

Defendant Norris first moves to dismiss the ADEA and ADA claims against him as plaintiff failed to name him in the EEOC charge of discrimination.  The court has reviewed the Charge of Discrimination, which is attached to the Complaint and appears to be either part of "Attachment C" or an exhibit to the Complaint.  While Defendant Norris is mentioned in the "Particulars" of the charge, the only entity named as a respondent is "Wackenhut Corp."  As to the particulars, the only mention of Defendant Norris is that he "informed me that [Wackenhut] lost their contract with Ingles and they had more security officers than they did jobs" and gave plaintiff a date to turn in his uniform.  Id.

A plaintiff must exhaust administrative remedies with the EEOC before filing suit under Title VII. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000).  Such procedural requirement under Title VII is made applicable to ADA

claims as a matter of law, 42 U.S.C. § 12117(a) and is also applicable to ADEA claims. 29 U.S.C. § 626(d). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir.2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996).

> Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.

Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009)(citation omitted). The appellate court in Jones went on to hold that

> Jones nevertheless maintains that even if she failed to exhaust her administrative remedies regarding these claims, the district court erred in entering judgment against her on the merits. On this point we agree with Jones. Because Jones's failure to exhaust administrative remedies deprived the district court of subject matter jurisdiction over the claims, "the only function remaining to the court [wa]s that of announcing the fact and dismissing the cause[s]." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Id., at 301. In conformity with Jones, recommend that plaintiff's ADEA and ADA claims be dismissed without prejudice as this court lacks subject matter jurisdiction over any such claim.

## b.    Rule 12(b)(6) Dismissal of Count I

For substantially the same reasons as discussed in regards to Defendant Clark, plaintiff cannot maintain an ADEA or ADA claim in any event against anyone bu an employer. There are no allegations that Defendant Norris was his employer and there

simply is no supervisory or individual liability available under the ADEA or ADA. Baird v. Rose, supra. state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6).

### c.    Rule 12(b)(6) Dismissal of Count II

While not specifically argued in this brief, it would appear from the face of the pleadings that plaintiff cannot state a cause of action for unequal pay discrimination (if such statute has actually been invoked) inasmuch as there is no plausible allegation that Defendant Norris was plaintiff's employer.  The court will recommend that this claim also be dismissed for failure to state a cause of action against Defendant Norris.

### C.    Defendant The Wackenhut Corporation's Motion to Dismiss Plaintiff's Complaint (#16)

### 1.    Nature of the Motion

Wackenhut has moved to dismiss this action pursuant to Rules 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6).  Fed.R.Civ.P. 12(b).  While Wackenhut takes issue with the process and its service, the court will first address the more substantive issue of whether, had defendant properly been served, plaintiff stated any cognizable claim against such defendant.

### 2.    Facts Drawn from the Complaint Relevant to this Motion

The summary of applicable facts contained in this defendant's brief is nearly identical to the brief of Defendant Norris.  For purposes of brevity, the undersigned adopts the facts as recited in reference to Defendant Norris's Motion to Dismiss. The undersigned notes, as did this defendant, what was missing: the EEOC charge contains no claim based on "unequal pay" and  contains no allegation that Wackenhut

refused to re-hire plaintiff.

### 3.    Discussion

#### a.    Rule 12(b)(1) Dismissal of Administratively Abandoned Claims

Two claims asserted in the Complaint are barred from consideration *ab initio*. To the extent plaintiff has asserted an unequal pay claim in Count II or a claim of unlawful refusal to rehire, this court lacks subject matter jurisdiction as such claims were not raised in the administrative charge. The undersigned incorporates the above discussion concerning subject matter jurisdiction and the failure to make a claim in an administrative charge. Just as failure to name a party in a charge divests jurisdiction over such party in this court, so too does failure to allege a claim divest this court of its ability to consider that claim in a judicial proceeding. Evans v. Technologies Applications & Service Co., 80 F.3d 954, 963 (4th Cir. 1996). Relevant case law indicates that a discriminatory discharge claim does not encompass an illegal failure to rehire claim. Lawson v. Burlington Industries, Inc., 683 F.2d 862, 863 (4th Cir. 1982); Chester v. American Tel. & Tel.. Co,, 907 F.Supp. 982, 987 (N.D. Tex. 1994). The undersigned will recommend that these claims be dismissed as to this defendant for lack of subject matter jurisdiction.

#### b.    Rule 12(b)(6) Dismissal of Implausible Claims

#### 1.    Age Discrimination

As mentioned briefly above in the context of the Ingles defendants Motion to Dismiss, plaintiff's claim that he was unlawfully terminated due to his age cannot survive scrutiny as the claim as alleged simply is not plausible. In the context of a

termination of employment, plaintiff must allege sufficient plausible facts that would support a finding in his favor on each of the four elements that establish a *prima facie* case of age discrimination:

(1)     that he is within the protected class;

(2)     that he was performing the duties of his job at level meeting the legitimate expectations of his employer;

(3)     that he was fired; and

(4)     that a younger person outside the protected age group was selected for the job in question.

See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir. 1982).   Of particular concern is the fourth element.  In this case, plaintiff's own allegations make success on such a claim implausible if not impossible as the only person he contends either replaced him or was offered his job or a similar job was George Howell, a person who was at least plaintiff's age, if not older.  The undersigned must, therefore, recommend that this claim be dismissed.

## 2.     Disability Claim

In the context of a termination of employment, plaintiff must allege sufficient plausible facts that would support a finding in his favor on each of the four elements that establish a *prima facie* case of disability discrimination.  A cause of action for discrimination in employment based upon disability requires allegations that plaintiff (1) is an individual with a disability (or perceived as such a person); (2) is otherwise qualified to perform job requirements, with or without reasonable accommodation;

and (3) was discharged solely by reason of a handicap. <u>Doe v. University of Maryland Medical Sys. Corp.</u>, 50 F.3d 1261, 1265 (4th Cir. 1995); 42 U.S.C. § 12112(a). Plaintiff has made no allegation as to what disability he suffered or was perceived to suffer. Further, his factual allegations do not even describe a termination based on disability; rather they unequivocally point to a termination based on termination of the Ingles security contract with Wackenhut or dissatisfaction with his work:

> I believe the reason for my not being hired by Executive Security Services to fill the same exact position of security guard for Ingles Distribution Center was because Sunny Clark (head of Security at Ingles Distribution Center) told Bob Copeland not to hire me.

Complaint, Attachment A, at 1. While plaintiff has listed the particular complaints Defendant Clark had made against him, at no point does plaintiff allege that such complaints were motivated by any disability, perception of disability, or difficulty in doing his job based on his disability. <u>Id.</u>

In his response, plaintiff makes two new factual allegations not related to his alleged discharge from employment. The first allegation is that Defendant Norris (Defendant Wackenhut's employee) "committed an unlawful employment practice by working a disabled person . . . for 28 hours straight without a break" one weekend. Plaintiff's Response, at 4. The second allegation is that Defendant Norris "never offered [Plaintiff] any options of working as a security guard with Wackenhut," specifically the opportunity to transfer to a security job at an Asheville hospital, after Wackenhut's contract to provide security services for the Ingles distribution center ended. <u>Id.</u>, at 5. Again, neither of this allegations of misconduct were raised in his

EEOC Charge and therefore cannot be herein raised for the reasons discussed above. Further, under <u>Beck v. City of Durham</u>, 129 F.Supp.2d 844 (M.D.N.C. 2000), it would be inappropriate to consider these alleged facts made outside the Complaint

> [b]ecause the Court's consideration of Defendants' Motions to Dismiss is limited to the allegations stated in the Complaint, Plaintiff cannot attempt to create claims for retaliation and constructive discharge in his response to Defendants' Motions to Dismiss.

<u>Id.</u>, at 855 (citation omitted).  The court has, however, considered each factual contention contained in the Complaint, including the allegation contained therein (made in a different context) that plaintiff was required to work a 28 hour shift because other employees failed to report to work.  Allegations that a person works, works hard, or works long hours is not probative, however, on the issue of whether a person was discharged because of a disability or their age.

Thus, even if every factual allegation of the Complaint was found to be true, plaintiff's ADA claim could not survive as none of his allegations would support a finding that he was discharged solely by reason of a handicap.  Having failed to allege plausible facts to support his claim, the undersigned must recommend that plaintiffs ADA claim against this defendant be dismissed in accordance with Rule 12(b)(6).

\* \* \*

Again, the undersigned sees no need to address this defendant's motion concerning service of process as to do so would be to waste judicial resources where, as here, it is clear that plaintiff's claims against this defendant cannot survive scrutiny under Rule 12(b)91), Rule 12(b)(6), and <u>Twombley</u>, <u>supra</u>.

### D.     Defendant Executive Security Services' Motion to Dismiss (#30)

### 1.  Nature of the Motion

Defendant Executive Security Services, more properly named Copeland Holdings, LLC, and hereinafter referred to as "ESS" has moved to dismiss the claims against it in accordance with Rules12(b) (2), (4), (5), and (6).  Fed.R.Civ.P. 12(b). While ESS takes issue with the process and its service, the court will first address the more substantive issue of whether, had defendant properly been served, plaintiff stated any cognizable claim against such defendant.

### 2.  Facts Drawn from the Complaint Relevant to this Motion

The summary of applicable facts contained in this defendant's brief is nearly identical to the briefs of Defendant Norris and Defendant Wackenhut.  For purposes of brevity, the undersigned adopts the facts as recited in reference to Defendant Norris's Motion to Dismiss and Defendant Wackenhut.

The following alleged facts appear pertinent to the claims asserted against this defendant.  First, plaintiff alleges that this defendant is the successor to Wackenhut in that ESS secured the security guard contract from Ingles when Wackenhut was terminated.  Plaintiff believed in December 2007, before his work with Wackenhut ended, that he would continue to be a security guard at the Ingles warehouse with ESS and it was simply a matter of ESS accepting his application.  When plaintiff learned in January 2008 that he was not being hired by ESS, he attributed such decision not to hire to Defendant Clark "because Sunny Clark . . . told Bob Copeland [owner of ESS] not to hire me."  Complaint, Attachment A, at 1.  Plaintiff contends that ESS's owner Bob Copeland lied to him when he said he was not hiring part-time

employees for the Ingles warehouse because he later hired part-time employees. Instead, plaintiff contends, he believes the real reason that he was not hired was because Defendant Clark told him not to. Another employee at ESS, Gary Rhodes, allegedly told plaintiff that "I'm sorry Tom, but Sunny Clark said she didn't want you out here anymore." Plaintiff also contends that Defendant Copeland lied to him concerning about non-disclosure of his "Ticket-to-Work" and by telling Gary Rhodes plaintiff was trying to take his job.

Attached to the Complaint as either an exhibit to the Complaint or an exhibit to Attachment C is plaintiff's second charge of discrimination filed with the EEOC. In that charge, he names "executive Security Services." Complaint, Attachment C, unnumbered exhibit. In that charge, he again alleges that he was not hired due to his age and disability, although again, no disabling condition is identified. He does, however, state in the charge that a younger person was hired for the job he applied for.

### 3. Discussion

#### a. Rule 12(b)(6) Dismissal of Age and Disability Claims

For much the same reasons discussed above in regards to Wackenhut, plaintiff has failed to state a cognizable claim against ESS for either age or disability discrimination. Plaintiff's own allegation that ESS failed to hire him because Defendant Clark told ESS not to not only makes the elements of each claim impossible to prove, it provides a legitimate, non-discriminatory reason justifying ESS's decision. While making employment decisions based on personal dislike does

not go down well, it is real and valid reason why certain people lose jobs or fail to get hired. As discussed above, the federal discrimination laws are not a panacea for all workplace wrongs or perceived slights. Simply because someone falls within a protected class, such as age or disability, does not in and of itself mean that the insults, affronts, and disagreements one experiences in the everyday workplace are necessarily attributable to alleged discrimination made unlawful by federal law.

If plaintiff is trying to seek redress for Defendant Clark allegedly spreading falsehoods about him, his remedy would have been found in the common law tort of defamation, which could have been filed in state court. If plaintiff's contention is that Defendant Clark improperly prevented him from getting a job with ESS, he could have filed a claim for tortious inference with prospective economic advantage in state court. If plaintiff is contending that the purported acts of Defendant Clark caused Wackenhut to rescind its employment contract with him, he could have brought a claim for tortious interference with contract in state court.

The federal courts and anti-discrimination laws are simply not meant to govern all aspects of the employment relationship, and the problems plaintiff is having getting out of the starting gate here serve as *indicia* that the facts of his case simply do no fit the narrow set of circumstances cognizable under the federal discrimination laws.

As discussed at length earlier, plaintiff's own allegations that an older individual was hired by this defendant to take his position, and plaintiff's participation in the "Ticket-To-Work" program (the only indicia that plaintiff might

be suffering a disability) was not a factor in this defendant's hiring decision. Indeed, no reason inference could be drawn from plaintiff's participation in such program and this defendant's knowledge of such program inasmuch as plaintiff alleges that this defendant already had hired and had working for it other workers in that program.

It appearing that plaintiff simply has not alleged facts in his Complaint or the Attachments thereto which would plausibly support a claim for either Age or Disability Discrimination, the undersigned must recommend that both claims be dismissed as to these defendants.

* * *

Again, the undersigned sees no need to address this defendant's motions concerning service of process as to do so would be to waste judicial resources where, as here, it is clear that plaintiff's claims against this defendant cannot survive scrutiny under Rule 12(b)(6) and Twombley, supra.

## E.    Defendant Bob Copeland's Motion to Dismiss (#32)

### 1.    Nature of the Motion

Defendant Bob Copeland, the owner of ESS, has also moved in a separate pleading to dismiss the claims against him in accordance with Rules12(b) (1), (2), (4), (5), and (6). Fed.R.Civ.P. 12(b). While Defendant Copeland also takes issue with the process and its service, the court will first address the more substantive issues of subject matter jurisdiction and of whether plaintiff has stated any cognizable claim against such defendant.

### 2.    Facts Drawn from the Complaint Relevant to this Motion

The facts relevant to this defendant have been reviewed above in the discussion of facts related to ESS. That discussion is incorporated herein by reference.

It appears that Defendant Copeland is not only the owner of ESS, but the key operating officer, running such business from Atlanta, Georgia. The court has closely reviewed the administrative charge against ESS and it does not appear that Defendant Copeland was named therein as a party. Instead, he is mentioned in the particulars of the charge.

### 3. Discussion

### a. Rule 12(b)(1) Lack of Subject Matter Jurisdiction

For the reasons discussed above as to Defendant Norris, this court lacks subject matter over plaintiff's claims for disability and age discrimination against Defendant Copeland because plaintiff failed to name him as a respondent to the EEOC Charge of Discrimination. Such discussion and then citations contained therein are incorporated herein by reference for purposes of judicial economy. The undersigned will recommend that these claims[3] be dismissed.

### b. Rule 12(b)(6): No Individual Liability

As discussed above, there is no liability for individuals or supervisors under the ADEA or ADA. Further, while this defendant appears to be the owner and operator of ESS, no allegations have been made that ESS is hollow corporation, that corporate formalities have been ignored, or that this defendant should for any reason

---

[3] The court notes that Count II, which concerns the wages plaintiff received and hours of duty while working for Wackenhut, has no application to any defendants other than Defendants Norris and Wackenhut.

be made to stand in place of the corporate entity.  See <u>Baird v. Rose</u>, <u>supra</u>.  The undersigned incorporates the discussion of such issue as to the same claims against Defendant Norris.  The undersigned will, therefore, recommend that these claims be dismissed under Rule 12(b)(6) as no claim can be stated against this individual as a matter of law.

### c.    Rule 12(b)(6) Failure Under Twombley

For the same reasons discussed as to Defendant ESS, which are incorporated herein by reference, the undersigned must recommend that plaintiff's claims for Age and Disability Discrimination asserted against this defendant be dismissed. It appearing that plaintiff simply has not alleged facts in his Complaint or the Attachments thereto which would plausibly support a claim for either Age or Disability Discrimination, the undersigned must recommend that both claims be dismissed as to this defendant under Rule 12(b)(6) and <u>Twombley</u>.

\* \* \*

Again, the undersigned sees no need to address this defendant's motions concerning service of process as to do so would be to waste judicial resources where, as here, it is clear that plaintiff's claims against this defendant cannot survive scrutiny under Rule 12(b)(1), Rule 12(b)(6), and <u>Twombley</u>, <u>supra</u>.

### F.    Defendant Maj. Terry Norris's and the Wackenhut Corporation's Motion to Strike (#43)

The Wackenhut defendants have moved to dismiss plaintiff's "reply to defendants' reply," which is a surreply.  For cause, the Wackenhut defendants cite Local Civil Rule 7.1, which permits only a memorandum in support, a response in

opposition, and a reply to be filed in relation to any motion. A surreply is not allowed by the Local Civil Rules and plaintiff did not seek permission to file such pleading. Plaintiff states in response that an unnamed "Federal Clerk of Court" told him that he must reply to Defendants' Reply Memorandum. Response, Docket Entry #45, at 1. If such advice was in fact, it was wrong as the Local Civil Rules do not allow surreplies. Plaintiff is advised that neither this court nor its employees can provide him with legal advice, and that it is up to him to either hire counsel or review the Local Civil Rules for himself. Such are available online without cost. The court will, therefore, recommend that defendants' Motion to Strike be allowed and that plaintiff's Brief Memorandum in Reply to Defendant's Reply Memorandum (#42) be stricken. The court will not, however, recommend that any monetary sanction be imposed inasmuch as it appears that plaintiff filed such surreply in good faith.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)    defendants Ingles Markets, Inc.'s and Sunny Clark's Motion to Dismiss (#12);

(2)    defendant Maj. Terry Norris's Motion to Dismiss Plaintiff's Complaint (#14);

(3)    defendant The Wackenhut Corporation's Motion to Dismiss Plaintiff's Complaint (#16);

(4)    defendant Executive Security Services' Motion to Dismiss (#30);

(5) defendant Bob Copeland's Motion to Dismiss (#32); and

(6) defendant Maj. Terry Norris's and the Wackenhut Corporation's Motion to Strike (#43)

be **ALLOWED**, that plaintiff's Brief Memorandum in Reply to Defendant's Reply Memorandum (#42) be **STRICKEN**, and that this action be **DISMISSED** in its entirety as to all claims and all defendants for reasons above stated.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: October 30, 2009

Dennis L. Howell
United States Magistrate Judge